# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-51449

United States Court of Appeals
Fifth Circuit

**FILED**

August 1, 2018

Lyle W. Cayce
Clerk

DEEPAK BUDHATHOKI, CLESMY E. CANALES GONZALES,
KATHERINE YURLIETH TURCIOS-PEREZ, on behalf of themselves and all
other similarly situated persons.

   Plaintiffs - Appellants

v.

KIRSTJEN M. NIELSEN, SECRETARY, U.S. DEPARTMENT OF
HOMELAND SECURITY, Director of Department of Homeland Security, in
his official capacity; LEON RODRIGUEZ, Director of United States
Citizenship and Immigration Services, in his official capacity; MARIO R.
ORTIZ, United States Citizenship and Immigration Services District Director
for San Antonio, in his official capacity,

   Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas

Before STEWART, Chief Judge, CLEMENT and SOUTHWICK, Circuit
Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

The plaintiffs appeal the dismissal of their suit challenging a federal
agency's denial of their applications for a specific immigrant status. They
argue the agency erred when it determined that orders each applicant received
from a Texas state court did not qualify them for the status. We AFFIRM.

No. 16-51449

## FACTUAL AND PROCEDURAL BACKGROUND

Deepak Budhathoki, born in August 1996, is a native of Nepal. Clesmy Gonzales, born in November 1996, is a native of Honduras. Katharine Yurlieth Turcios-Perez, born in June 1994, is a native of Honduras. These plaintiffs, who were each over the age of 18, filed what a Texas statute labels Suits Affecting Parent-Child Relationship ("SAPCR"). TEX. FAM. CODE § 101.032. Although the Texas Family Code generally defines *child* or *minor* as "a person under 18 years of age who is not and has not been married or who has not had the disabilities of minority removed for general purposes," *id.* § 101.003(a), it also provides: "In the context of child support, '*child*' includes a person over 18 years of age for whom a person may be obligated to pay child support," *id.* § 101.003(b) (emphasis added). Thus, child support can be sought in a SAPCR suit for someone over 18 years old. *See id.* § 154.006(a).

In the SAPCR suits, which were filed in three different Travis County district courts,[1] the state courts awarded child support and made certain findings. First, the applicants were not yet 21 and were unmarried. Second, all applicants had been abandoned by their parents. Finally, returning to their home countries was not in their best interest. The state courts also retained jurisdiction over the plaintiffs until certain events occurred, such as marriage, death, joining the army, and either graduating from high school or turning 18, whichever occurred later.

---

[1] The three SAPCR orders were entered by two different associate judges. Associate judges can be appointed by district judges in Texas if the position has been authorized by the Commissioners Court of the county; one such judge can assist multiple courts in the same county; each judge serves at the will of the appointing district judge(s). TEX. GOV'T CODE §§ 54A.102, 54A.105. The district judge can refer all or portions of civil cases to the associate judge, who renders a decision with the same force of law as the referring court. *Id.* §§ 54A.106, 54A.111. There is no challenge here to the associate judges' delegated authority to render final decisions.

2

No. 16-51449

After the plaintiffs received the state court SAPCR orders, they filed Special Immigrant Juvenile ("SIJ") status petitions with the United States Customs and Immigration Services ("USCIS" or "agency"). We will discuss that status later. The agency requested more evidence to demonstrate if "the dependency order is valid under Texas state law, given the applicant's age." Because each plaintiff "had reached 18 years of age prior to obtaining the SAPCR," the agency needed "evidence that the court order was issued in compliance with state law governing juvenile court dependency" as the law requires.

The plaintiffs responded to the requests for evidence. Subsequently, a Field Officer Director denied each petition and gave notice of the right to an administrative appeal. Instead, plaintiffs[2] filed suit in the United States District Court for the Western District of Texas, seeking "declaratory relief regarding the definition of 'child' under Texas state law and the proper interpretation and application of the terms 'juvenile court' and 'dependent,' as those terms are defined by federal law."[3] Concluding that the SAPCR orders were not proper ones to support SIJ status, the district court granted defendants' motion to dismiss. The plaintiffs timely appealed.

---

[2] An original plaintiff, Ramon Soto Carias, was dismissed and Turcios-Perez added.

[3] 8 C.F.R. § 103.3(a)(ii) permits the petitioner to file an appeal with the Administrative Appeal Office of the Agency, but it does not require it. *See also* 8 C.F.R. § 204.11(e). Unlike final orders of removal, exhaustion of administrative remedies is not required by the Immigration and Nationality Act for denials of special immigrant status. *See* 8 U.S.C. § 1252(d)(2). As a result, filing suit in the district court was proper.

No. 16-51449

DISCUSSION

A district court's grant of a motion to dismiss is reviewed *de novo*. *Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010). Review of an agency's "administrative decision is conducted according to the deferential standards of the Administrative Procedures Act ("APA"), which permits the setting aside of agency actions, findings, and conclusions that are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law' or 'unsupported by substantial evidence.'" *Cedar Lake Nursing Home v. U.S. Dep't of Health & Human Servs.*, 619 F.3d 453, 456 (5th Cir. 2010) (quoting 5 U.S.C. §§ 706(2)(A)–(E)).

The plaintiffs make these arguments: (1) both the agency and the district court ignored limitations on their actions imposed by the APA and by federal common law rules of preclusion; (2) the district court did not have the full administrative record, so remand is warranted; and (3) this court should consider certain documents that were not before the district court. We will take those arguments in order after first providing context for SIJ status.

The Immigration and Nationality Act of 1990 included a new form of immigration relief for non-citizen children. SIJ status provides a path for certain children to become lawful residents of the United States. The statute has been amended several times since 1990. To understand what the statute requires now, it is useful to know about the initial concept of SIJ status and how it has evolved. For an overview, we refer to the USCIS Policy Manual, "which is the agency's centralized online repository for USCIS's immigration policies." U.S. CITIZEN AND IMMIGRATION SERV., POLICY MANUAL, "About the Policy Manual" (2017), 2014 WL 10102392. The Manual governs the USCIS in the following ways:

4

No. 16-51449

> The USCIS Policy Manual contains the official policies of USCIS and must be followed by all USCIS officers in the performance of their duties. The Policy Manual does not create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person.

*Id.*

The 1990 enactment "[e]stablished an SIJ classification for children declared dependent upon a juvenile court in the United States, eligible for long-term foster care, and for whom it would not be in their best interest to return to their country of origin." 6 U.S. CITIZEN AND IMMIGRATION SERV., POLICY MANUAL J.1, "Purpose and Background" (2017), 2017 WL 443002. The statute initially required the child to be declared dependent upon the court and to be eligible for foster care. *Id.* Then, the 1994 amendments "[e]xpanded eligibility from those declared dependent on a juvenile court to children whom such a court has legally committed to, or placed under the custody of, a state agency or department." *Id.* In 1998, the statute was amended again in order to "[l]imit[] eligibility to children declared dependent on the court because of abuse, neglect, or abandonment." *Id.*

In 2008, the most recent statutory amendments "[e]xpanded eligibility to include children whom a juvenile court has placed under the custody of a person or entity appointed by a state or juvenile court." *Id.* Now, SIJ status is available to

> an immigrant who is present in the United States –
> (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable

5

due to abuse, neglect, abandonment, or a similar basis found under
State law.

8 U.S.C. § 1101(a)(27)(J).  By regulation, a *juvenile court* is "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles."  8 C.F.R. § 204.11(a).

Once the applicant has the necessary predicate order, he must submit his application to the agency, attaching the state court order.  *See id.* § 204.11(d).[4]  The petitioner bears the burden of establishing eligibility.  8 U.S.C. § 1361.  A successful application also requires the consent of the Secretary of Homeland Security to the grant of the SIJ status, which can be given through directors of USCIS.  *See* 8 U.S.C. § 1101(a)(27)(J)(iii).

Thus, a state court must make initial determinations, and the USCIS then considers if they match the requirements for SIJ status. *See* David B. Thronson, *Kids Will Be Kids? Reconsidering Conceptions of Children's Rights Underlying Immigration Law,* 63 OHIO ST. L.J. 979, 1004 (2002).  Our questions are whether the right kind of court issued the right kind of order.

*1. Review under the Administrative Procedures Act*

The plaintiffs make several arguments that are based on constraints imposed on agencies themselves and on courts when reviewing agency decisions.  Though the plaintiffs did not break their arguments into quite these segments, the following identifies the administrative law issues in the order in

---

[4] A regulation details the documentation to be submitted when seeking SIJ status, but it has not been updated to reflect statutory changes.  For example, proof is required that a juvenile court "found the beneficiary eligible for long-term foster care," but that is no longer a statutory requirement.  *Compare* 8 C.F.R. § 204.11(d)(2)(ii), *with* 8 U.S.C. § 1101(a)(27)(J).  Changes to the rules have been proposed but not finalized.  Special Immigrant Juvenile Petitions, 76 Fed. Reg. 54978, 54986 (proposed Sept. 6, 2011) (would be codified at 8 C.F.R. §§ 204, 205, and 245).

which we will discuss them. (A) The USCIS acted beyond its authority in deciding that the state courts did not have jurisdiction to enter the orders to support SIJ status for these plaintiffs and that the court orders did not make the necessary findings. (B) Regardless of what the USCIS could decide, the state courts had jurisdiction and the orders contained the proper findings. (C) The district court substituted its reasoning in upholding the USCIS decision instead of analyzing the allegedly flawed reasoning actually used by the agency. (D) The USCIS acted arbitrarily and capriciously.

*A. Agency authority to determine sufficiency of state court's order*

The plaintiffs argue that the USCIS exceeded its statutory authority by concluding they had failed to show that the Texas state court had jurisdiction. That finding was stated in the final paragraph of the agency's denial of SIJ status:

> In conclusion, as the evidence submitted in conjunction with your I-360 petition and response to the [Request for Evidence], is insufficient to meet your burden of showing that the SAPCR included with your SIJ petition was issued pursuant to the court's jurisdiction over you as a juvenile, your request for SIJ classification is hereby denied.

That single sentence summarizes the agency's longer description of the procedural background and its analysis of the law. The agency determined the effect of each state court order was simply to require child support to be paid. These plaintiffs were all older than age 18. The agency did not challenge the plaintiffs' argument that *child support* could be ordered in Texas for a person age 18 or older and until certain events, such as high school graduation, occurred. The flaw in the case, the agency held, was that nothing showed that any of the orders was issued by a court "having jurisdiction under state law to make judicial determinations about the care and custody of juveniles." *See* 8

C.F.R. § 204.11(a). In sum, USCIS concluded that requiring child support is not a care and custody determination, and under state law individuals 18 years and older were not juveniles even if some are eligible for child support. The plaintiffs seek to overcome that deficiency by arguing that each state court order was "a valid custody or dependency order for SIJ purposes because the order affects the duties of parents to support their children."

We will explain in the next section of the opinion what the operative Texas statutes state. The issue analyzed first is whether this federal agency had the authority to resolve these two issues about the relevant orders: (1) were they qualifying orders, and (2) if they were, does the federal agency have authority to decide the state court had no jurisdiction to issue them? Because of our decision on the first issue, namely, that these were not qualifying orders, we will only briefly discuss the authority of an agency to decide that a state court had no jurisdiction to act.

The plaintiffs claim that the USCIS Policy Manual supports their view that the agency had to accept the state court orders as qualifying them for SIJ status. They refer us to a section that disclaims any desire by USCIS to control state courts on how they are to apply their own statutes:

> There is nothing in USCIS guidance that should be construed as instructing juvenile courts on how to apply their own state law. Juvenile courts should follow their state laws on issues such as when to exercise their authority, evidentiary standards, and due process.

6 U.S. CITIZEN AND IMMIGRATION SERV., POLICY MANUAL J.3, "Documentation and Evidence" (2017), 2017 WL 443004. Just before that language, though, the *Manual* also states: "The juvenile court order (or orders) must provide the required findings regarding dependency or custody, parental reunification, and best interests." *Id.* The *Manual* is simply indicating that state courts need to

follow state and not federal law in ruling on what comes before them, but it is also an obligation of the USCIS to review the orders for the needed findings.

A federal agency must be able to review a state court order offered as support for some federal benefit to determine its consistency with the federal requirements. The plaintiffs do not show us any authority to the contrary, and common sense compels the validity of the point. For example, prior versions of the SIJ status statute required that an applicant have been deemed eligible for long-term foster care. Immigration Act of 1990, Pub. L. No. 101–649, § 153, 104 Stat. 4978, 5005 (1990). Surely the agency needed to be able to examine the order and determine if in fact such eligibility had been determined. How searching that examination can be is the only real issue.

The dispute here is about the discretion, indeed the obligation in USCIS's view, of the federal agency to decide the sufficiency for federal purposes of Texas state court child support orders. The USCIS examined those orders and did not say the state courts had no jurisdiction to order *child support* for individuals over the age of 18. Instead, it concluded that the state court had no jurisdiction under Texas law to declare the *care and custody* of someone who was at least 18 years old and, besides, had not actually declared dependency, *i.e.,* the orders did not in the language of the *Manual* make the "required findings regarding dependency or custody." 6 U.S. CITIZEN AND IMMIGRATION SERV., POLICY MANUAL J.3, "Documentation and Evidence" (2017), 2017 WL 443004. The closest the state court got to the SIJ requirements was simply to say the orders could be "disclosed and used to support a petition" for SIJ status.

A similar argument in the SIJ context has been addressed by one circuit court of appeals. *See M.B. v. Quarantillo*, 301 F.3d 109, 110 (3d Cir. 2002). There, USCIS had refused to consent to commencement of the plaintiff's

juvenile court proceedings because, under its analysis of state law, the plaintiff was too old to be eligible for a dependency order and thus would not be able to satisfy the SIJ requirements. *Id.* This initial consent was necessary because the applicant was in federal custody, and the Secretary of the Department of Homeland Security had to consent before a state juvenile court could act. *Id.*; *see also* 8 U.S.C. § 1101(a)(27)(J)(iii). As a result, the agency's determination occurred before any state court proceedings. *Quarantillo,* 301 F.3d at 116. Nonetheless, the Third Circuit rejected the plaintiff's argument that the state juvenile court would be the sole judge of its own jurisdiction, leaving the agency without the authority to make a preemptive decision that an individual did not meet the "jurisdictional age of [the] juvenile court." *Id.* at 111. The USCIS "can reasonably consider the requirements of a petition for special immigrant juvenile classification" to determine whether, under state law, "allowing the juvenile court proceeding to go forward would have amounted to . . . an exercise in futility." *Id.* at 115–16.

This sort of agency obligation to review state court orders for their sufficiency is certainly the approach of the regulations identifying the documents that must be submitted in support of SIJ status:

> (2) One or more documents which include:
>
> (i) A juvenile court order, issued by a court of competent jurisdiction located in the United States, showing that the court has found the beneficiary to be dependent upon that court;
>
> (ii) A juvenile court order, issued by a court of competent jurisdiction located in the United States, showing that the court has found the beneficiary eligible for long-term foster care; and
>
> (iii) Evidence of a determination made in judicial or administrative proceedings by a court or agency recognized by the juvenile court and authorized by law to make such decisions, that it would not be in the beneficiary's best interest to be returned to the country of

No. 16-51449

nationality or last habitual residence of the beneficiary or of his or her parent or parents.

8 C.F.R. § 204.11(d).

The regulation requires both that the court be one of "competent jurisdiction" and that it have made certain findings.[5] Whether a state court order submitted to a federal agency for the purpose of gaining a federal benefit made the necessary rulings very much is a question of federal law, not state law, and the agency had authority to examine the orders for that purpose.

Finally, we examine the plaintiffs' argument that questions of how to apply the state court orders fall into the general category of the obligation of federal courts to give full faith and credit to the rulings of state courts. A federal statute provides that the records and proceedings of state courts "shall have the same full faith and credit in every court within the United States" as they have in that state. 28 U.S.C. § 1738. By its own terms, though, the statute does not apply to federal *agencies* examining state court proceedings. *American Airlines, Inc. v. Dep't of Transp.*, 202 F.3d 788, 800 (5th Cir. 2000). A federal agency must consider, though, and so does this court in reviewing the agency's decision, whether the policies favoring full faith and credit to the state court orders, such as repose and concerns about federalism, outweigh any federal interests. *See id.* This balancing test was not applied by the district court nor the agency. The plaintiffs claim that was error.

---

[5] USCIS policy guidance referenced by the district court has the agency look even more searchingly than we are discussing here. It directs USCIS to decide whether the SIJ benefit was "sought primarily for the purpose of obtaining the status of an alien lawfully admitted for permanent residence, rather than for the purpose of obtaining relief from abuse or neglect [or abandonment.]" USCIS Interoffice Memorandum from William R. Yates, Assoc. Dir. for Operations, to Reg. Dirs. & Dist. Dirs. (May 27, 2004), at 2. Neither the USCIS nor the district court made a finding about "primary purpose."

No. 16-51449

Our response is to agree with the USCIS that there was no failure to give proper respect to the state court order.  The state court ordered child support.  The agency, concluding that for SIJ status there needed to be more, refused to grant the special status but did not interfere with the operation of the state court's support orders.  The state and federal orders had different roles, and each continues to perform those functions.

Whatever responsibilities are exclusively for the state court, USCIS must evaluate if the actions of the state court make the applicant eligible for SIJ status.  We now turn to how the agency exercised its review authority.

### B. Sufficiency of state court rulings as to the plaintiffs

Before deciding anything about state law, we summarize our earlier discussion of the federal requirements for the grant of SIJ status.  The SIJ statute ties eligibility to whether the applicant has been the subject of certain state court orders.  Explaining, the *Manual* states:

> The petitioner must be the subject of a juvenile court order that declares him or her dependent on a juvenile court, or legally commits to or places the petitioner under the custody of either an agency or department of a state, or a person or entity appointed by a state or juvenile court.

6 U.S. CITIZEN AND IMMIGRATION SERV., POLICY MANUAL J.2, "Eligibility Requirements" (2017), 2017 WL 443003.  Thus, there are three bases for a state court order to satisfy the dependency requirement of SIJ status: (1) if the court determines the juvenile is dependent on the court; (2) if the court places the juvenile into state custody; or (3) if the court places the juvenile into the custody of an individual or entity.  *See* 8 U.S.C. § 1101(27)(J)(i).  Here, there is no argument that a court placed any plaintiff into the custody of the state,

some other entity, or an individual. Thus, the only possibility is that they were made dependent on the court, and there was jurisdiction to do so.

The three orders each found that a parent had a support obligation that would continue until one of several events occurred. Each also set the amount of the periodic payments and concluded "that this Order may be disclosed and used to support a petition for Special Immigrant Juvenile status." In sum, the court in each case ordered a parent to pay child support and then suggested such an order was relevant for SIJ status. There was no declaration of dependency. The plaintiffs, though, have argued that "the SAPCR is a valid custody or dependency order for SIJ purposes because the order affects the duties of parents to support their children."

In considering the adequacy of these state court orders, we compare what federal law requires that a state court have done with what Texas law permits it to do. The applicable federal regulation defines a "juvenile court" as "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles." 8 C.F.R. § 204.11(a). Although the regulation permits an applicant for SIJ status to be someone who has not yet become age 21, what controls on eligibility for that status is the state law governing decisions over the care and custody of juveniles. *See Id.* § 204.11(c). The relevant state law here provides that in most family law contexts, *child* is an individual under 18 years old. *See* TEX. FAM. CODE § 101.003(a). The only statutory exception is this: "In the context of child support, 'child' includes a person over 18 years of age for whom a person may be obligated to pay child support." *Id.* § 101.003(b). Another statute provides that a court may order support for a child until age 18, or until high school graduation, or until certain other events. *Id.* § 154.001(a). From these provisions, it certainly seems proper for the state court to have entered orders

that awarded child support to each of the plaintiffs, who were over the age of 18 but qualified apparently because they were still in high school and not yet age 21. The federal question, though, is not whether these are valid support orders, but whether they are the equivalent of declaring the child dependent on a juvenile court.

As we have discussed, the USCIS is entitled to exercise some diligence in its examination of state court orders offered in support of SIJ status. Guidance on whether these orders involved a declaration of "dependency" in this context can be found in the *Manual*, which uses a California statute "[f]or an example of state law governing declarations of dependency." 6 U.S. CITIZEN AND IMMIGRATION SERV., POLICY MANUAL J.2 "Eligibility Requirements" (2017), 2017 WL 443003, n.5 (citing CAL. WELF. & INST. CODE § 300). That statute allows the court to make temporary custody determinations while trying to ameliorate potentially harmful aspects of the child's family environment. *See In re Ethan C.*, 279 P.3d 1052, 1059–61 (Cal. 2012).

We conclude, then, that before a state court ruling constitutes a dependency order, it must in some way address custody or at least supervision. That is emphasized in guidance from the agency in interpreting the language from a prior version of the statute. In an opinion on an administrative appeal, the predecessor agency to USCIS held that "[t]he acceptance of jurisdiction over the custody of a child by a juvenile court, when the child's parents have effectively relinquished control of the child, makes the child dependent upon the juvenile court." Jose A. Menjivar, (INS Administrative Appeals Unit, Jan. 3, 1995), 1995 WL 18235939 at *2. In sustaining the appeal, the agency relied on statements from one of the drafters of the Texas Family Code. *Id.* This drafter explained that a family court's designation of a nonparent as managing conservator over a juvenile in a case where parental rights have been

terminated is the equivalent of a dependency order. *Id.* We know from our earlier discussion of amendments to the statute governing SIJ status that placing the child in the custody of someone or some entity is not required, but at least the person must be declared to be dependent on the court. *See* 8 U.S.C. § 1101(a)(27)(J). The plaintiffs urge that because the state courts could exercise jurisdiction over the plaintiffs for child support orders, the plaintiffs were dependent on the juvenile court for that purpose. "Dependent" for SIJ purposes, though, demands that a state court do more than impose a financial obligation on parents.

We proceed one step further in order to analyze, should our analysis of the language of the orders have overlooked some implication, whether the absence of formulaic language in the state court orders is all that blocks their utility for SIJ status. We do not think so. Earlier we discussed the arguments about full faith and credit. Under the statute we mentioned, 28 U.S.C. § 1738, full faith and credit should not be given to an earlier state court ruling unless the relevant legal issue was "fully and fairly considered." *See Underwriters Nat'l Assurance Co. v. N.C. Life and Accident and Health Ins. Guar. Ass'n*, 455 U.S. 691, 707 (1982). We expect that obligation applies to agencies under *American Airlines*, 202 F.3d at 800, which discussed federal agencies' consideration of state court orders, inasmuch as a federal court on review of the agency action will need to make these inquiries.

Applying that obligation, and as far as the records here show, the state court proceedings were not adversarial. The court orders provide that the parents filed a waiver of service and did not appear. Further, there were no arguments or recorded consideration by the courts of whether any of the subjects of the support orders should be made dependent on those courts or placed in the care and custody of another person or some institution, and if so,

15

whether there was authority to do so despite the age of the plaintiffs.  Including better language in the state court orders would at most take us to the deferred step in our analysis in this opinion, which is whether the state court could declare someone who was at least 18 years old dependent on the court.

In concluding this discussion, we briefly address Texas caselaw about the jurisdiction of its courts.  We make no holding as to jurisdiction, both because it is unnecessary and because the caselaw is solely from two intermediate Texas courts.  Opinions from such courts are persuasive but not binding in our analysis of state law.  *See ExxonMobile Corp. v. Elec. Reliability Serv., Inc.*, 868 F.3d 408, 414 (5th Cir. 2018).  The caselaw, though, supports our conclusion that the orders in this case cannot be considered a determination of care and custody.

One appeal discussed a SAPCR suit brought in 2009 seeking a conservatorship and SIJ findings, but the court denied the relief.  *In Re J.L.E.O.*, No. 14-10-00628-CV, 2011 WL 664642, at *1 (Tex. App.—Houston [14th Dist.] Feb. 24, 2011, no pet.) (mem. op., not designated for publication).  After reaching age 18, the plaintiff filed a request for a judgment declaring the findings needed for SIJ status, but the declaration was refused — it is unclear if this was a new suit or a motion filed in the existing one.  *Id.* at *1.  The appellate court held that because the plaintiff "was no longer a child as defined by the Texas Family Code. . . , the juvenile court no longer had jurisdiction over the person to make the requested findings" of care and custody  *Id.* at *2.

Another Texas Court of Appeals decision, entered after briefing in this case was completed, adopted the reasoning of *In re J.L.E.O.* to conclude that where the plaintiff was already 18, the court no longer had jurisdiction to make determinations about his care and custody as required by the SIJ statute.  *In Interest of B.A.L.*, No. 01-16-00136-CV, 2017 WL 3027660, at *6 (Tex. App.—

Houston [1st Dist.] July 18, 2017, no pet.) (mem. op., not designated for publication).

The plaintiffs here distinguish *In re J.L.E.O.* by arguing it analyzed "whether the [trial] court correctly declined to make care and custody orders for want of jurisdiction in a suit brought pursuant only to the Texas Declaratory Judgment Act — and not pursuant to any provision of the Texas Family Code." The distinction is meaningless. Regardless of the procedural mechanism used by that plaintiff, the court construed provisions of the Texas Family Code. It summarized that "in some states, the court's jurisdiction over juveniles may be extended" after the individual turned age 18, but "Texas has no similar provision." *In re J.L.E.O.*, 2011 WL 664642 at *2 n.5 (citations omitted). According to the *J.L.E.O.* court, there is a three-year gap in Texas between the state-law age of majority (18) after which care and custody can no longer be ordered and the outer limits of the federal regulation for SIJ eligibility (21). *See id.*

In summary, the USCIS properly determined that the state court orders for child support were not the equivalent of the necessary "care and custody" rulings required for SIJ status. Whether the Texas law even allows its courts to make such rulings for individuals who have passed their eighteenth birthday is an issue we leave for another day.

### C. District court's obligation to rely on agency reasoning

The plaintiffs argue that the district court relied on reasoning not employed by the agency when upholding the USCIS decision. Courts must focus on the justifications expressed by the agency at the time of its ruling. If an agency decides based on invalid reasons, "[t]he reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned

basis for the agency's action that the agency itself has not given." *Liwanag v. INS*, 872 F.2d 685, 692 (5th Cir. 1989) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). But we need not require pellucid clarity "if the agency's [analysis] may reasonably be discerned." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (quoting *Bowman Transp. Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)).

The plaintiffs' argument is based on its characterization of what the USCIS decided. Each decision included the following language: "the evidence submitted in conjunction with your I-360 petition and response to the RFE [] is insufficient to meet your burden of showing that the SAPCR included with your SIJ petition was issued pursuant to the court's jurisdiction over you as a juvenile, [so] your request for SIJ classification is hereby denied." The plaintiffs then argue that the agency changed its claimed justification in the district court, where USCIS pointed out, quite accurately as we have discussed, that the state court orders were for child support and never declared dependency.

We do not see the discrepancy. The USCIS summarized the Texas statute that a child or minor must be under age 18 and that the order itself required support payments to continue until the applicant reached age 18 or until certain later events occurred, like high school graduation. The USCIS noted that what the state courts ordered was child support. It remarked that the applicants argued that such an order was an SIJ dependency or custody order "because the order affect[ed] the duties of parents to support their children." Having referenced the state law that minors are those under 18, having said that an extension beyond that age for child support was ordered, then having described the plaintiffs' reasoning for why these orders were "valid custody or dependency orders," the USCIS effectively stated its disagreement

18

by saying it was not convinced that "the SAPCR was issued by a *juvenile court* making a care and custody determination of a *juvenile*."

The district court did analyze and agree with the agency's arguments about what is required for a dependency order to support SIJ status. It also discussed the plaintiffs' insistence that this was a new justification. The district court found the portion of the agency decision we just quoted — the order was not from "a *juvenile court* making a care and custody determination of a *juvenile*" — to be the reasoning that no dependency order was actually entered.

Not central to our resolution, but at least of interest is the plaintiffs' initial characterization of the USCIS's decisions. Both the original and amended complaints challenged "USCIS's denial of Plaintiff's SIJ petition on the basis that a person who has reached the age of 18 is not a 'child' under the Texas Family Code and, therefore, not 'dependent' on a 'juvenile court.'"

The district court did not adopt a *post-hoc* justification for its decision.

### D. Arbitrary and capricious decision

The plaintiffs also claim USCIS's denials were arbitrary and capricious. Agency action is arbitrary and capricious "when it is 'so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Wilson v. U.S. Dep't of Agric.*, 991 F.2d 1211, 1215 (5th Cir. 1993) (citation omitted). The district court held that the denials were not arbitrary and capricious because the agency looked for evidence that the Texas court could have found the plaintiffs to be dependent juveniles. Seeing no statutory basis for making that determination, the agency denied the applications. The agency considered both state law and its own regulations that set the requirements for dependency orders. The letters of denial reference the fact that state courts

No. 16-51449

hearing SAPCR cases may exercise jurisdiction over individuals older than 18 for the limited purpose of child support but the otherwise applicable definition for a child is one who is under 18 years old.

The only order as to each of the plaintiffs was one for child support, causing the agency to conclude there was insufficient evidence of a valid dependency order. It then denied the petitions. The agency relied on state law and its own regulations to make the determination that the SAPCR orders did not comply with what SIJ status petitions require. We agree with the district court that the agency's decision was not arbitrary or capricious.

Thus, we reject each of the arguments about defects in the agency and district court rulings under the APA. We now turn to the remaining issues.

### 2. *Motion to take judicial notice*

The plaintiffs have moved in this court to have us take judicial notice of certain documents. We review first the request to take notice of Ramon Soto Carias's USCIS proceedings and then the request to take notice of the supplemental SAPCR orders.

Originally, Soto Carias was a plaintiff in this action, but the agency reconsidered, reversed its denial of his petition, and granted him SIJ status. The plaintiffs argue that ruling is relevant to their case and, because the documents are a matter of public record, they should be judicially noticed under Federal Rule of Evidence 201.

Rule 201(b) permits a court to take notice of facts "generally known within the trial court's territorial jurisdiction" or facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Such a request may be denied, though, where granting the motion would "undermine the general rule that a party

20

may not add documents to the record that were not presented to the district court." *Board of Miss. Levee Comm'rs v. EPA*, 674 F.3d 409, 417 n.4 (5th Cir. 2012) (citation omitted).  There, this court denied a request to supplement the record or take judicial notice of an official report prepared by the Corps of Engineers after determining the information in the supplemental materials was not necessary to deciding the case.  *Id.*

The documents involving Soto Carias all predate the district court's decision and could have been provided to that court.  We also do not see that the materials are relevant to our decision.  We are examining the validity of the agency's decisions that, as to the three plaintiffs, qualifying dependency orders were not entered.   We have concluded that the decision was correct.  If the Soto Carias documents might show inconsistent reasoning, and we do not hold they do, the time for injecting that into the district court's deliberations has passed.  We deny the request.

The plaintiffs also ask that we take judicial notice of additional orders entered in each of the plaintiffs' SAPCR cases.  They were entered two months after the district court entered its order, and that court relied in part on the absence of any declaration of dependency.  In what were called "motions to clarify," though perhaps "motions to enhance" would have been more accurate, the plaintiffs sought an additional order in each case.  The state court complied.  Each order states that the petitioner was a child under Texas Family Code Section 101.003(b); that there was a basis for a child support order; and that the petitioner was "dependent on this Court pursuant to this Court's authority under Texas Family Code 154.001(a)(1) and 154.002."

Our analysis has not relied on the absence of some magic words in the state court orders.  We discussed why "dependency" for SIJ status purposes has a specific federal meaning.  Merely saying, now, that the order was one

declaring dependency does not address that problem. Regardless, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). These documents are not part of the administrative record, could not have been considered by the agency making the decision, and are therefore irrelevant to this appeal.

We deny the plaintiffs' motion to supplement.

### 3. *Entire record*

The plaintiffs argue the district court failed to consider the entire administrative record, which is reflected in that court's failure to reference the SAPCR petitions. According to the plaintiffs, the record, when properly considered, demonstrates the agency had sufficient evidence to conclude that the SAPCR orders were issued by a juvenile court. We interpret the brief to concede, though, that those petitions were actually before that court.

The plaintiffs rely on one of our precedents in which we reversed so the district court could consider the entire administrative record. *United States v. Menendez*, 48 F.3d 1401, 1410 (5th Cir. 1995). There, the relevant statute required the government to file the entire administrative record with the district court, and that had not been done. *Id.* at 1409. The relevant statute here is Section 706 of the APA, which allows the court to review only "those parts of [the record] cited by a party." 5 U.S.C. § 706. The real issue the plaintiffs raise is not that the SAPCR petitions were absent from the record but that they were absent from the court's analysis. *Menendez* does not require the court to refer to any particular set of documents.

AFFIRMED. MOTION TO SUPPLEMENT RECORD DENIED.